Filed 10/31/25  Becerra v. Charter Communications CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts  and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| VICTOR BECERRA, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC., et al., <br><br> Defendants and Appellants. | B333509 <br><br> (Los Angeles County Super. Ct. No. 21STCV14283) |

APPEAL from an order of the Superior Court of Los Angeles County, Gail Killefer, Judge.  Affirmed.

Kabat Chapman & Ozmer, Joseph W. Ozmer II, J. Scott Carr; Latham & Watkins, Roman Martinez and David Steinbach for Defendants and Appellants.

Law Offices of David R. Denis, David R. Denis and Armando M. Galvan for Plaintiff and Respondent.

Appellants Charter Communications, Inc., Charter Communications, LLC, and Charter Communications Holding Company, LLC (collectively, Charter), moved to compel to arbitration of respondent Victor Becerra's lawsuit against Charter. The court granted the motion. Later, however, the court vacated its order compelling arbitration based on new Court of Appeal authority, *Ramirez v. Charter Communications, Inc.* (2022) 75 Cal.App.5th 365 (*Ramirez I*), holding that Charter's standard employee arbitration agreement—the same agreement at issue here—contains unconscionable provisions that cannot be severed.

On appeal, Charter argues the instant agreement contains a delegation clause that requires an arbitrator to decide all threshold questions of arbitrability—including whether the agreement is unconscionable—and thus that the court erred in addressing this issue and vacating the order compelling arbitration. Because Charter invited this claimed error by failing to raise the delegation clause when the court was considering changes to its initial arbitration order, we decline to reach Charter's delegation clause argument on appeal.

Charter argues in the alternative that the court reversibly erred in concluding Charter's arbitration agreement contains unconscionable provisions that cannot be severed. But the California Supreme Court has since held that all but one of these provisions is unconscionable. (See *Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 495 (*Ramirez II*).) And Division Four of this court, on remand from that Supreme Court decision, has concluded that these provisions cannot be severed. (See *Ramirez v. Charter Communications, Inc.* (2025) 108

2

Cal.App.5th 1297, 1305-1307 (*Ramirez III*).)[1]  We are bound by the Supreme Court's unconscionability analysis and we agree with Division Four that severance cannot cure the unconscionability the Supreme Court identified.  Accordingly, we affirm.

## FACTUAL BACKGROUND

### A.    The Mutual Arbitration Agreement

Charter hired Becerra in June 2018.  As part of Charter's online employee onboarding process, Charter presented Becerra with both a summary and the full contents of a "Mutual Arbitration Agreement" (the MAA).  Becerra checked the box at the end of the MAA confirming that he had "read, under[stood], and agree[d] to be legally bound by" the MAA, which he further understood "require[d] [him] to arbitrate any and all disputes that arise out of [his] employment, except as expressly provided otherwise."[2]  (Capitalization omitted.)

The MAA provides it "will be governed by the Federal Arbitration Act [(the FAA)]."  It contains a delegation clause

---

[1] The remittitur issued in *Ramirez III, supra*, 108 Cal.App.5th 1297, on April 29, 2025.

[2] The employment application Becerra executed before Charter hired him also advised Becerra that "[a]ny person who submits an application for consideration by Charter agrees to be bound by the terms of [the MAA], where the person and Charter mutually agree to submit any covered claim, dispute, or controversy to arbitration.  By submitting an application for consideration you are agreeing to be bound by the [MAA]."  Next to that advisement Becerra selected the answer, "I agree."

3

requiring the parties to arbitrate "all disputes related to the arbitrability of any claim or controversy."[3]

### B. Charter's Motion to Compel Arbitration and Order Granting It

In 2021, Becerra sued Charter, alleging wrongful termination and various disability-related claims. Charter moved to compel arbitration pursuant to the MAA. Charter's motion argued, inter alia, that "the parties [had] agreed to delegate gateway questions to the arbitrator" via the delegation clause, and thus that "an arbitrator, rather than this court should determine" any dispute over the arbitrability of Becerra's claims. (Capitalization omitted.)

Becerra's opposition to Charter's motion did not respond to Charter's delegation clause argument or otherwise address the delegation clause. Instead, Becerra contended that the entire MAA was unconscionable and therefore unenforceable. Specifically, Becerra argued provisions regarding statutes of limitations and attorney fees rendered the entire MAA unconscionable.

On September 9, 2021, the court granted the motion to compel arbitration and stayed the case. In its written order, the court specifically found that "a valid arbitration agreement exists" and rejected the arguments that there was sufficient unconscionability for the MAA to be unenforceable. The court did not address the delegation clause.

---

[3] We address other relevant provisions of the MAA in our discussion of the parties' unconscionability arguments below.

4

### C.    Order Vacating Order Compelling Arbitration

Becerra moved for reconsideration of the September 9, 2021 order compelling arbitration in light of the Court of Appeal's February 18, 2022 decision in *Ramirez I, supra,* 75 Cal.App.5th 365, which held several provisions in the MAA were unconscionable and not severable.  (*Id.* at pp. 386–387.) Becerra's reconsideration motion argued *Ramirez* was "stare decisis authority governing and controlling the result in the present case" (italics omitted), requiring the trial court to vacate its prior order, find the MAA unenforceable, and deny Charter's motion to compel.

On August 16, 2023, the court held a hearing on the reconsideration motion.  Because Becerra filed the motion more than six months after the statutory deadline (see Code Civ. Proc., § 1008, subd. (a)),[4] the court denied it as untimely.  The court, however, in light of *Ramirez I* and on its own motion, vacated its prior order compelling arbitration.  In an August 31, 2023 minute order so ruling, the court "adopt[ed]" the *Ramirez I* decision, identifying the reasoning and holding of the decision as the sole basis for its ruling.  The court did not address the delegation clause, which neither *Ramirez I*, nor Becerra's motion based thereon, nor Charter's opposition thereto, had addressed.

## DISCUSSION

Charter filed a timely notice of appeal challenging the August 31, 2023 order vacating the September 9, 2021 order, which compelled arbitration.  Charter argues the delegation clause is dispositive of the instant appeal and requires reversal.

---

[4] All further statutory references are to the Code of Civil Procedure.

Becerra responds that the order is not appealable and that, in any case, Charter has forfeited the delegation clause argument. Charter argues in the alternative that the trial court erred in both its unconscionability and severance analysis. We conclude the appeal is properly before this court and affirm.

### A. Appealability

Becerra argues that the August 31, 2023 order is interlocutory and not appealable. (See § 904.1 [addressing appealability of orders].) But under the California Arbitration Act, a "party may appeal from an order denying a petition to compel arbitration. (§ 1294, subd. (a).) When the trial court vacated its prior order compelling arbitration, it . . . in effect . . . denied a petition to compel arbitration." (*CPI Builders, Inc. v. Impco Technologies, Inc.* (2001) 94 Cal.App.4th 1167, 1171; *Blake v. Ecker* (2001) 93 Cal.App.4th 728, 739 [section 1008, subdivision (c) order reconsidering an earlier order compelling arbitration "decide[s] [a] defendant['s] motion to compel arbitration"].) Indeed, Becerra's own reconsideration motion asked the trial court to "deny[ ] [Charter's] motion to compel arbitration." (Capitalization omitted.) (See § 1008, subd. (c) [trial court may "reconsider a prior order it entered . . . on its own motion *and enter a different order*," italics added].) The August 31, 2023 order is thus appealable.

Becerra next argues that "the notice of appeal was defective because neither [Charter] nor [Charter]'s attorney of record at the time . . . signed the notice; no notice of association of attorney or substitution was ever filed to formally make the [signing] law firm 'of record.' " But the only authority Becerra cites for this argument is California Rules of Court, rule 8.100(a)(1), which imposes no requirement that an appellant or his "attorney

6

of record" sign a notice of appeal. *Other* subsections of rule 8.100 refer to a party's "attorney of record" (see Cal. Rules of Court, rule 8.100(e)(1) & (e)(2)(A)), but rule 8.100(a)(1) governing the signatures required on a notice of appeal does not. Rather, that rule provides in full: "To appeal from a superior court judgment or an appealable order of a superior court, other than in a limited civil case, an appellant must serve and file a notice of appeal in that superior court. The appellant or the appellant's attorney must sign the notice." (Cal. Rules of Court, rule 8.100(a)(1).) Here, the notice of appeal was signed by "[a]ttorneys for [Charter]" in conformance with California Rules of Court, rule 8.100(a)(1).

Becerra's arguments regarding appealability thus fail.

### B. Delegation Clause

Becerra argues that Charter has forfeited any argument based on the delegation clause, because Charter did not raise such an argument in response to either Becerra's motion for reconsideration or the court's sua sponte vacatur of the order compelling arbitration. Charter counters that it timely raised the delegation clause as a basis for compelling arbitration in its initial motion to compel arbitration, and that this was sufficient to preserve the argument for appeal. We disagree.

When initially granting Charter's motion to compel arbitration, the court did not rely on the delegation clause. Rather, it assessed the enforceability of the MAA as a whole and thereby implicitly *rejected* the argument that the clause requires an arbitrator to decide enforceability. Charter nevertheless had received the relief it was seeking—an order compelling arbitration—and thus understandably did not object. But when Becerra later asked the court to reconsider the enforceability of

7

the MAA, and when the court chose to do so on its own motion, Charter did not argue that, under the delegation clause, MAA enforceability questions are for the arbitrator, not the court. To the contrary, Charter encouraged the court to reject Becerra's unconscionability arguments and conclude the MAA is enforceable—something Charter had previously argued the court could not do because of the delegation clause. By not only failing to raise the delegation clause in connection with these subsequent motions, but also taking positions inconsistent with the delegation clause argument previously raised and implicitly rejected by the court, Charter has at the very least invited the error of which it now complains. (See *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212 ["[u]nder the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error"]; *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403.) We therefore agree with Becerra that we should not consider Charter's delegation clause argument.[5]

### C.    Unconscionability and Severance

Charter challenges the court's conclusion that the MAA contains multiple unconscionable provisions. But the California Supreme Court in *Ramirez II* has since reached the same conclusion regarding all but one of the MAA provisions the trial court here identified. (*Ramirez II*, *supra*, 16 Cal.5th at pp. 495-512.) The trial court thus did not err in concluding

---

[5] Further, there is no reason to believe that an arbitrator would reach a different result regarding unconscionability than did the trial court. (See Discussion part C, *post*.)

the MAA contains the following three unconscionable provisions *Ramirez II* identifies:

First, under the MAA's definitions of excluded and included claims, "a wide range of statutory and policy-based claims that would typically be initiated by an employee are directed into arbitration" but "only a small subset of claims that would typically be initiated by Charter are similarly directed [the arbitration] . . . [and the MAA] specifically excludes claims related to intellectual property rights and severance or noncompete agreements, claims for equitable relief related to unfair competition or the disclosure of trade secrets or confidential information, and claims for theft or embezzlement." (*Ramirez II, supra*, 16 Cal.5th at p. 498.) *Ramirez II* held "th[is] lack of mutuality in the [MAA's] covered and excluded claims clauses was substantively unconscionable" (*id.* at p. 495) in the absence of "a justification grounded in something other than the employer's desire to maximize its advantage based on the perceived superiority of the judicial forum."[6] (*Ramirez II, supra*,

---

[6] Charter implies that we may reach a different result regarding the included and excluded claims provision because *Ramirez II* acknowledged that it would not have been unconscionable, had Charter established a legitimate business justification for the provision's lack of mutuality. (See *Ramirez II, supra*, 16 Cal.5th at pp. 499-500.) Although "a contract can provide a 'margin of safety' that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable [citation], . . . unless the 'business realities' that create the special need for such an advantage are explained in the contract itself, which is not the case here, it must be factually established." (*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th

16 Cal.5th at p. 496.)  Second, the MAA "limits the time for filing an arbitration claim" (*id.* at p. 491) in a manner that " 'cuts the period that would otherwise apply to file a [California Fair Employment and Housing Act (Gov. Code, § 12940 et seq.) (FEHA)] action in court by as much as two years[ ]' . . . [and] raise[s] the possibility that [an employee] would 'be compelled to arbitrate before [the Department of Fair Employment and Housing] has completed its investigation and issued a "right-to-sue" letter.' " (*Id.* at p. 501.)  Third, the MAA addresses "the allocation of arbitral costs, fees, and expenses" (*id.* at p. 491) in a manner that "violate[s] the dictates of FEHA and *Armendariz* [*v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83]" in that it "unambiguously requires an award of attorney fees [to the opposing party], even if the moving party is a defendant in a FEHA action and the arbitrator has made no finding of frivolity, groundlessness, or continued litigation." (*Ramirez II, supra,* at p. 508.)  It thus "creates a potential obligation to pay costs only in an arbitral setting . . . undermin[ing] the public policy embodied in FEHA's asymmetric [fee] rule." (*Ibid.*)

*Ramirez II* did not decide whether to sever these unconscionable provisions from the MAA, but rather set forth the proper framework for analyzing severance and instructed the Court of Appeal to apply that framework following

1519, 1536.)  Charter did not present evidence establishing such business realities, despite having an opportunity to do so in opposing Becerra's motion for reconsideration.  Charter's proffered justifications for the lack of mutuality on appeal are thus insufficient for us to distinguish the Supreme Court's analysis of the excluded and included claims provision in *Ramirez II.*

10

remand. (See *Ramirez II, supra,* 16 Cal.5th at pp. 517-518.) In *Ramirez III,* Division Four applied this framework and concluded that the provisions were not severable. (*Ramirez III, supra,* 108 Cal.App.5th at p. 1300.) We agree with *Ramirez III*'s analysis that the unconscionable provisions are not severable because they (1) are not collateral to the MAA's main purpose of "subject[ing] the employee to arbitration ' "as a means of maximizing employer advantage" ' " and (2) cannot be severed without further reforming or augmenting the MAA. *(Id.* at pp. 1305-1307.)

Division Four went on to note that "[i]n any event, even if we agreed with Charter that the unconscionable provisions are collateral to the contract's main purpose and it is possible to sever those provisions, severance is still not warranted because 'enforcing the balance of the contract would [not] be in the interests of justice.' " (*Ramirez III, supra,* 108 Cal.App.5th at p. 1306.) We do not view this additional conclusion as necessary to the core holding of *Ramirez III.* Nor do we view the "interests of justice" concept as an independent basis for declining to sever a term under *Ramirez II.*[7] But we need not agree with *Ramirez III*'s alternative reasoning in this regard in order to agree with the decision's core analysis and holding

---

[7] Charter argues on appeal that the Federal Arbitration Act preempts the "interests of justice" aspect of the *Ramirez II* severance framework. Because we do not rely on this concept, we need not and do not address Charter's argument.

that the MAA's unconscionable provisions are not severable.[8] (*Ramirez III*, *supra*, 108 Cal.App.5th at pp. 1305-1307.)

Charter argues the court necessarily abused its discretion because it applied the incorrect severance framework—that is, because the court did not apply the *Ramirez II* severance analysis, which the California Supreme Court had not yet created. But here, based on *Ramirez III*'s analysis of the same MAA provisions under the correct and current severance framework, we may conclude the trial court reached the correct result, albeit for different reasons.

Finally, in arguing we should reach a different conclusion regarding the MAA than did the California Supreme Court and Division Four, Charter notes that Becerra did not initially challenge some of the provisions *Ramirez II* held to be unconscionable, but instead raised these arguments for the first time in his motion for reconsideration. Charter argues that we therefore must limit our unconscionability and severance analysis to the provisions Becerra challenged at the outset of the proceedings, and that this would lead to a different result

---

[8] Division Four also rejected a request by Charter to remand the severance issue to the trial court. (*Ramirez III, supra*, 108 Cal.App.5th at p. 1305.) In so doing, the Court of Appeal noted the Supreme Court could have, but did not, instruct that the trial court should decide severance under the new framework. (*Ibid.*) Although this reasoning does not directly apply here, it is instructive that the Supreme Court did not consider it necessary for the trial court to apply the new severance framework in the first instance. In any event, even if we were to remand to the trial court, it would be bound to follow *Ramirez III*'s holding on the severability of these MAA provisions.

regarding severance than *Ramirez III* reaches.  But we are not reviewing an order granting that reconsideration motion; we are reviewing one in which the court acted on its own motion and reconsidered its prior ruling.  Thus, the court, not Becerra, determined the scope of what it was addressing.  Becerra's decisions on when to challenge what provisions in the MAA do not affect the court's inherent authority to address all provisions the court viewed as unconscionable.  (See *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1108 ["[i]f a court believes one of its prior interim orders was erroneous, it should be able to correct that error no matter how it came to acquire that belief"].) Moreover, Charter had the opportunity to (and did) brief the unconscionability of the larger group of provisions in its opposition to Becerra's motion for reconsideration.

We therefore hold the trial court here did not abuse its discretion in declining to sever the same unconscionable provisions at issue in *Ramirez III*.

## DISPOSITION

The court's August 31, 2023 order is affirmed.  The parties shall bear their own costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


BENDIX, J.


WEINGART, J.

14